**Talia Y. Guerriero, OSB #115721**
talia@oregonworkplacelaw.com
**Christina Stephenson, OSB # 102287**
christina@oregonworkplacelaw.com
**Robert K. Meyer, OSB #086470**
robert@oregonworkplacelaw.com
MEYER STEPHENSON
1 SW Columbia, Suite 1850
Portland, OR 97204
Phone: (503) 459-4010
Fax: (503) 914-1461

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **JENNIFER ROSE,** | Case No. |
| Plaintiff, | COMPLAINT |
| v. | (U.S.C. § 1983 - Violations of Due Process, Free Speech, and Right to Violations; ORS 659A.199 & ORS 659A.203 – Whistleblower Retaliation; Defamation; Wrongful Discharge; ORS 659A.030 – Aiding and Abetting; ORS 652.220 & 29 U.S.C. 201 *et seq* - Equal Pay Act Violations; ORS 652.120, ORS 652.140, & ORS 652.610 – Wage and Hour Violations) |
| **CITY OF COQUILLE,** an Oregon City; **RICK HOHNBAUM,** in his official and individual capacities; **DOUGLAS MILLER**, in his individual and official capacities; **SCOTT SANDERS**, in his individual and official capacities; **SAMUEL BAUGH**, in his individual and official capacities; and **JAMES MARTIN**, in his official and individual capacities; | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff, through her counsel, makes the following Complaint against Defendants:

## PARTIES, JURISDICTION & VENUE

1.

Plaintiff Jennifer ("Plaintiff" or "Rose") is an individual who resides in Coos County, Oregon.

2.

Defendant City of Coquille, Oregon, ("Defendant City" or "the City"), is a city government organized under the laws of the State of Oregon. The City is responsible for ensuring that all its facilities, systems, and departments comply with federal and state laws, and the Constitution of the United States of America. The City is liable for the tortious conduct of its agents and employees pursuant to ORS 30.265(1). The City is a "person" for purposes of 42 U.S.C. § 1983. The City is a "public employer" for the purposes of ORS 659A.203.

3.

Defendants Rick Hohnbaum, Douglas Miller, Scott Sanders, Samuel Baugh, and James Martin are individuals who, at all times material to this complaint, were agents and employees of the City for Plaintiff's claims for injunctive relief, and who upon information and belief, reside in Oregon. In the alternative, Hohnbaum, Miller, Sanders, Baugh, and Martin acted in their individual capacities as described below for purposes of Plaintiff's claims for damages. Hohnbaum, Miller, Sanders, Baugh, and Martin are each a "person" for purposes of 42 U.S.C. § 1983 and ORS 659A.030.

4.

Plaintiff brings this employment retaliation action for monetary relief, damages, costs, and attorney fees for herself to redress injuries done to her by the City and/or the officers,

employees or agents of said Defendant in contravention of her federally and state protected rights.

5.

This is an action for damages under 42 U.S.C. § 1983 and Oregon state laws. The court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over Plaintiff's state claims pursuant to 42 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

6.

This Court is the appropriate venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in the District of Oregon, Eugene Division.

**FACTUAL ALLEGATIONS**

7.

Defendant City hired Plaintiff Rose as a City Recorder from June of 2016 until she was unlawfully terminated on or around March 10, 2021.

8.

In or around the Fall of 2019, Defendant City hired Sam Baugh as City Manager.

9.

Plaintiff Rose was an employee in good standing who received numerous positive performance reviews over the years, including that she has a "great attitude," "very dependable," "has helped hold the City together during a very difficult time," and "is very reliable." Plaintiff Rose received a significant pay raise mere weeks before the retaliation commenced.

/ / /

10.

In addition to Plaintiff Rose's 2020 pay raise being a merit increase, Defendant Baugh indicated that the raise was also intended to bring her wages in line with the recent Pay Equity study that Defendant City had conducted. Pay Equity studies are typically conducted to bring female employees' wages in line with male employees' wages.

11.

Plaintiff Rose witnessed Defendant Baugh struggle with his management duties and witnessed numerous complications as a result of the mismanagement, including with City finances and taxpayer money. Nonetheless, Plaintiff Rose loved her job and her City, initially believed in Defendant Baugh, and worked hard alongside him to rise to the challenges and keep the City running well.

12.

Until 2020, Plaintiff Rose's role with the Finance department was limited to Accounts Payable Clerk duties, which generally involved ministerial tasks such as acquiring signatures from the persons with authority and submitting documents. Plaintiff Rose does not have expertise or a background in "finance."

13.

Around the end of 2019, several key finance employees left all at once. City Council ("Council") voted to eliminate the in-house positions of Payroll Clerk, Public Works/Planning Director, and Finance Director. For the remaining positions, Defendant City failed to hire qualified individuals to process the finances and the department started to fall apart.

14.

As a result, Defendant Baugh assigned Plaintiff Rose tasks to help fill in the gaps, but

Defendant City failed to provide her any training or direct her appropriately regarding these types of job duties. Instead, Plaintiff Rose was trying to learn complicated tasks on the job. Defendant Baugh even went as far as to identify Plaintiff Rose as a "primary contact" for accounts without even notifying her or explaining the job responsibilities to her.

15.

One example of new job duties included Plaintiff Rose collaborating with Defendant Baugh to attempt, for the first time, to submit employee timecards to a brand-new outside agency – Cardinal Payroll – without any training whatsoever. Within just a couple of months, the City switched from Cardinal Payroll to ADP payroll and Defendant Baugh again asked Plaintiff Rose to try to submit timecards to the new payroll agency without any adequate guidance or training. By this time, Defendant Baugh had directed employees to stop making "journal entries" that document the finances because of the increasing inaccuracies. Multiple accounts and employee deductions were months behind.

16.

Throughout 2020, Plaintiff Rose repeatedly reported to Defendant Baugh her concerns that the new finance employees were making significant errors and that many financial and administrative matters were slipping through the cracks or were being handled contrary to the law, making it difficult for her to perform the tasks she was assigned. During this period of time and upon information and belief, the City's Attorney, James Martin, was deeply involved with the City's management and advising Defendant Baugh on related matters.

17.

In or around May of 2020, Defendant City authorized a maximum of $30,000 for a third-party agency to assist in identifying and correcting the financial mismanagement. Throughout the

process, Plaintiff Rose frequently assisted in explaining how the financial mismanagement arose

because she had significant institutional knowledge and most of the other employees that had

been in the department had left. However, Plaintiff Rose did not have the capacity to fix all of

the problems on her own, the current staff were constantly making significant errors, and

everyone's frustrations with the consequences of the mismanagement were high. For example,

on July 28, 2020, Plaintiff Rose stated to Defendant Baugh and the third-party company:

> "I have emailed ADP every month an updated accrual spreadsheet
> I made that has every employee, what they accrue and the balance.
> Every month I am told…ok Jennifer we will get it this time.
> Payroll comes and its not on there and employees are mad. [. . .]
>
> Most help would be if I had someone here who knew how to run
> payroll or update accruals or could balance accounts. [. . .]
>
> So please tell me what my priority is here. The out of balance I
> know is a domino effect that is why I have been harping on it for
> months now [. . .] Wish I wasn't always the bearer of bad
> news!!!!"

18.

On or around September 1, 2020, Defendant Baugh and the third-party company

presented financials to Council that Plaintiff Rose had a good faith belief were inaccurate.

Plaintiff Rose had already complained to Defendant Baugh prior to the meeting that the

financials were inaccurate because certain bills had not been attributed to the correct year, which

is also referenced as proper "backdating." Plaintiff could not in good faith let the Council rely

upon an inaccurate financial report and shared her concerns with Council at the meeting.

19.

The next day, the third-party company chastised Plaintiff Rose in an email, stating that it

was "unfortunate that the Council now thinks there is something wrong with the financials" and

insinuated that Plaintiff Rose was not working together with them "as a team." Plaintiff Rose

called the third-party company whose representative then stated his concerns that Council thinks poorly of him because of Plaintiff Rose's report at the Council meeting.

20.

At the following Council meeting in or around September 2020, the third-party company requested – and was denied – payment of $18,000 of work already performed and a grant of an additional $30,000 to extend its contract. The next day, Defendant Baugh told Plaintiff Rose that the third-party company attributed Council's denial of funds to Plaintiff Rose speaking up at the prior Council meeting about the continued financial inaccuracies. After Council denied the funds, the third-party company retaliated against Plaintiff Rose by inaccurately accusing her of being untrusting and trying to undermine the process and insinuating that she was refusing to perform job duties that had never even been assigned to her.

21.

To the contrary, Plaintiff Rose consistently went above and beyond in attempting to assist with responding to inquiries about the City's finances to the best of her abilities while being extremely overworked by the cascade of new job duties, the accusations that she had not performed work that had never been assigned to her, and the lack of assistance from qualified staff. In fact, Plaintiff's performance evaluation from approximately September 20, 2020 was extremely positive, including comments that Plaintiff Rose:

- "has the best interest of the city at heart and works everyday to achieve the goals of the city,"

- "is very professional in her interactions with the public and other employees";

- "communicates well with her supervisor and fellow employees";

- "is always willing to help out anyone that needs additional help";

- "owns her mistakes and is willing to say when she has made one";

- "has been a big help during this transition [and] is very knowledgeable in her

  position and is helpful to others."

22.

Plaintiff Rose's frustration with Defendant Baugh's mismanagement peaked as the

situation became worse, not better. In or around September 2020, she became more vocal about

her concerns and began to collect evidence to present to Council. In or around early October

2020, Plaintiff Rose told a co-worker that she hoped Defendant Baugh did not use his $10,000 of

discretionary funds to circumvent Council's orders not to pay the third-party company more

money. Upon information and belief, the co-worker shared that information with Defendant

Baugh. Additionally, Plaintiff Rose stated in an email to Defendant Baugh on October 15, 2020:

> "In [the third-party company's] report he says all General Ledger entries
> are being processed by [Employee 1] [. . .] Sam, this is what I tried to say
> [ ] for MONTHS to you and why there are so many discrepancies in
> Springbook. It's a basic accounting function and no one should be in the
> general ledger without that knowledge. Had you hired [ . . . ] someone
> with more knowledge we could have worked hard with [the third-party
> company] and be WAY father in this but to allow someone who doesn't
> have the basic functions to continue to work in our software continued to
> put us deeper in the hole. [The third-party company] saying in one email
> its all taken care of but in the report its not? It is not taken care of we are
> still off $275,000.00 for last fiscal year plus the backdated entries. I tried
> to explain to [Employee 2] but she got frustrated and acted like I was a
> trouble maker. I don't even know how to act here anymore."

23.

As Plaintiff Rose became more vocal and the pressure of the evidence of financial

mismanagement mounted against Defendant Baugh, he suddenly turned on Plaintiff Rose.

Towards the end of October 2020, it became clear that Defendant Baugh did not want to hear

Plaintiff Rose's reports any longer and wanted to silence and blame her. At that point, Plaintiff

Rose knew she was not going to make any progress with him in fixing the City's financial situation.

24.

At approximately the end of October 2020, Plaintiff Rose requested a meeting with the Council to report the gross mismanagement and other legal violations. The magnitude of the financial mismanagement had the potential to undermine the City's ability to fulfill its public mission and activities; Plaintiff Rose had a good faith belief that the particulars of the mismanagement constituted illegal activity and her report of this mismanagement was on a matter of public concern fairly related to political, social, or other aspects of the community. Reporting on these matters to Council was not within Plaintiff Rose's job duties.

25.

Originally, Defendant Martin improperly denied Plaintiff Rose's request to present the evidence to Council, forcing Plaintiff Rose to push back for Defendant Martin to set up the meeting with Council. Defendant Baugh then told Plaintiff Rose that Defendant Martin had informed him of her request.

26.

Immediately thereafter on November 9, 2020, Defendant Baugh issued a Notice of Investigation to Plaintiff Rose with allegations that she committed the very wrongdoings for which he was being investigated. The November 9, 2020 Notice of Investigation was blatantly retaliatory and contained no fewer than sixteen areas of false allegations, many of which were not within the scope of her actual job duties or responsibilities. Although the Notice alleged that it was prompted by the third-party company expressing its retaliatory concerns about Plaintiff Rose, it failed to explain why it had waited over a month after the end of the third-party

company's relationship with the City to issue the Notice of Investigation.

27.

On or around November 20, 2020, Plaintiff Rose communicated by email to the Council

on matters of public concern – namely, that she was suffering unlawful retaliation for speaking

out about Defendant Baugh's misuse of funds – and stated that:

> "I was suspended last week due to my constant inquiry of the city's finances and the use of tax payers money. [. . .]
>
> My constant questions of why this was done or wasn't this done came more clear about September. The City Manager is accountable for the jobs [Defendant Baugh] states were mine, the City Manager is to approve everything going out of the office, meaning payroll, AP and City Recorder. [. . .]
>
> With Sam's evaluation coming up and nothing being fixed even a year later, he knew his job could be on the line so he decided out of retaliation to frame me. [. . .]
>
> I believe I am off work because I was onto the misuse of funds and buying without approval and knowledge of unaccounted expenses. I really want to get back to work and support MY town the town where I was raised and born in the hospital here!"

28.

Plaintiff also specifically complained about the overuse of taxpayer money on Defendant

Martin's legal bills and his attempts to obstruct her meeting with Council, stating:

> "By fall I was realizing I cannot keep quiet any longer and requested an executive session to finally explain issues to Council and what [Defendant Baugh] was doing about it. [Defendant Baugh] knew of this session I had asked for because [Defendant Martin] our attorney was contacted by me asking if I could request a session and he called [Defendant Baugh]. Our policy specifically stated if the problem lies with the city manager, employees may go to Council. [. . .]
>
> Our attorney account is way over what we budgeted for [the prior attorney]. Everyone just uses [Defendant Martin] as a reference instead of learning the law. This adds up."

Despite Plaintiff Rose's specific accusations against Defendant Martin, he continued to administer and advise the City on matters related to Plaintiff and the investigation against her.

29.

On or around November 23, 2020, Plaintiff Rose presented her evidence of mismanagement, potential legal violations, and matters of public concern to the Council. On or around November 30, 2020, Plaintiff Rose again emailed Council regarding her evidence, which included over 150 pages of documentation, of mismanagement, potential legal violations, and matters of public concern.

30.

After Council terminated Defendant Baugh's employment, Defendants City, Martin, Sanders, and Miller failed to rescind the retaliatory Notice of Investigation against Plaintiff Rose. Instead, Defendant City and individual Defendants subjected Plaintiff Rose to a severe lack of due process affecting her liberty interests, unnecessarily and maliciously impugning her reputation and stigmatizing her, and ultimately resulting in her unlawful termination. Their actions include, but are not limited to:

a)  placing Plaintiff Rose on an administrative leave lasting more than three months when the City Personnel Manual states "Administrative suspension periods normally shall not exceed ten (10) days;"

b)  depriving Plaintiff Rose of a wage increase without due process or notice and an opportunity to be heard and in violation of the recent Pay Equity study;

c)  misleading Plaintiff Rose by inaccurately stating that Defendant Martin was providing "neutral" guidance and not advocating for one side when he was in fact representing the City and had been providing Defendant Baugh advice during the

time in question;

d)  hyper-scrutinizing Plaintiff Rose and treating her differently than similarly-situated employees;

e)  failing to properly investigate the allegations against Plaintiff Rose and conducting a biased investigation, and issuing a biased investigation report written by Defendant Hohnbaum, including but not limited to:

    i.  trying to attribute job duties and obligations on Plaintiff Rose that were not within her scope of authority or training;

    ii.  failing to conduct due diligence in trying to understand how the department actually worked and Plaintiff Rose's role in it;

    iii.  failing to utilize sound and unbiased investigation techniques;

    iv.  making ugly and unsubstantiated insinuations throughout the investigation for no reason other than to skew the investigation;

    v.  refusing to follow up on pertinent evidence;

    vi.  presenting allegations as "substantiated" with no actual or reliable evidence to substantiate the allegations; and

    vii.  hiring an outside agency to review the evidence for "inconsistencies" but then materially misrepresenting the scope of the agency's involvement in the investigation.

f)  making numerous false and defamatory comments about Plaintiff Rose and her job performance to multiple third parties, including telling people that Plaintiff Rose's employment had been terminated before it was terminated; and

g)  failing to respond timely to Plaintiff Rose's public information requests and failing to

provide her with the evidence necessary to present her case on the allegations, thereby

withholding a meaningful opportunity to be heard and clear her name.

31.

Defendant City and Defendant Martin began unlawfully depriving Plaintiff Rose of $520

per month effective on or around December 1, 2020 through her termination on March 10, 2021

for an approximate total loss of $1,727.74. Defendant Martin's December 18, 2020 letter further

described unauthorized deductions from Plaintiff Rose's December 2020 paycheck:

> "Because Ms. Rose requested and received a mid-month draw,
> which was paid at the higher and incorrect pay level ($2,605.50
> gross), her December 31, 2020 check will be adjusted accordingly
> and will be $2,085.50 before taxes and authorized deductions."

Each paycheck thereafter also contained additional unauthorized deductions as a result of the

unlawful wage reduction.

32.

On or around March 1, 2021, Defendant Miller unnecessarily presented to Council

skewed details of approximately twenty (20) false allegations against Plaintiff Rose with many

of them unsubstantiated or reliant upon false statements and insinuations purporting to be fact.

Shockingly, Defendant City immediately thereafter issued a Notice of Disciplinary Hearing with

only five (5) allegations. Defendant Miller's unnecessary publication of false statements to

Council amounted to at least negligence, and has caused Plaintiff Rose reputational, financial,

and emotional harm.

33.

Coquille City Charter, Chapter V, Section 21(e) states that no "manager *pro tem* may

appoint or remove a city officer or employee, except with the approval of five members of the

council." On or around March 1, 2021, Defendant City violated the City Charter by delegating its

authority to the *pro tem* City Manager, Scott Sanders, to terminate Plaintiff Rose's employment

without City Council oversight.

34.

On multiple occasions during the investigation, Plaintiff Rose reported a matter of public

concern, including that she believed she was being discriminated and retaliated against, as

described in a detailed Tort Claims Notice on or around January 8, 2021. Plaintiff Rose stated:

> "I, Jennifer Rose, City Recorder for the City of Coquille is
> submitting this tort claim as the whistle blower who spoke out and
> provided documentation against the City Manager for a gross
> waste of funds, an abuse of authority and a substantial amount of
> money unaccounted for in our government software. I provided
> evidence he was defrauding and lying to the Council, employees
> and the tax payers.
>
> I was suspended from my job as soon as the City Manager found
> out from our attorney I needed a private session with Council. I am
> the victim of retaliation for coming forward about the
> discrepancies in city funds. I am the victim of retaliation and
> endured months of watching the city hall fall apart at the hands of
> a City Manager who had no experience in municipal government
> or running a city. I stepped up to the plate a year ago and I was
> given three new employees upstairs with zero experience in
> municipalities and watched my town dwindle to a devastated
> state."

Defendants failed to investigate Plaintiff's allegations and failed to take adequate remedial

measures to address her retaliation complaints. Upon information and belief, Defendant City

investigated other employee complaints.

35.

Plaintiff Rose also sent multiple information requests between January 2021 and April

2021, but Defendant City repeatedly failed to respond to her inquiries and cited inapplicable

exemptions. Upon information and belief, Defendant City has more timely and fully responded

to other public information requests.

36.

On or about March 21, 2021, Defendants notified Plaintiff that her employment with Defendant City was terminated based on pretextual allegations that are not well-supported by evidence, none of which are specifically described in the original November 9, 2020 Notice of Investigation, and none of which have to do with Plaintiff Rose's assistance with the financial audit nor the mismanagement of significant public funds.

37.

On or around March 8 and March 19 of 2021, Plaintiff requested review of allegations of retaliation, including her termination, to Council pursuant to the City Personnel Manual, including Sections 2.3 and 2.4, but Defendant City has ignored her requests to date.

38.

Plaintiff issued Tort Claims Notices on or around January 9, March 25, March 31, and April 23 of 2021.

39.

Defendant City continues to owe Plaintiff outstanding wages that it failed to pay her upon termination. Defendant City also failed to provide Plaintiff Rose an accounting of her final paycheck or a COBRA notice. Plaintiff sent a notice of nonpayment on or around March 31, 2021 but has received no response to date.

40.

Plaintiff's concerns of retaliation and mismanagement have been subject of legitimate news interest and a subject of general interest and of value and concern to the public and news outlets have published related articles. One reporter emailed Plaintiff Rose on or around April 7, 2020, stating:

> "Just following up regarding the tort claim notice you filed. […]
> Sam Baugh alleges that the reason you were placed on
> administrative leave was because you were unwilling [to] assist in
> the city's efforts to work with multiple outside firms to investigate
> and correct the city's financial situation."

On or around April 12, 2021, the media reported multiple other false statements that Defendant Baugh made about Plaintiff Rose. The allegations are false, amount to at least negligence, violate her confidentiality, and have harmed Ms. Rose's reputation and caused her financial and emotional harm. Notably, the November 9, 2020 Notice of Pre-Disciplinary Hearing and the Termination Letter fail to make such allegations and such allegations did not form the basis of Plaintiff's termination.

41.

On information and belief, Defendants have treated others outside of Plaintiff's protected class more favorably in investigations and discipline decisions.

42.

Defendants' actions were intentional or in deliberate disregard of Plaintiff's Constitutional rights, were under color of state law and deprived Plaintiff of her Constitutional, federal and state law rights.

43.

Defendants' conduct was carried out with wanton or reckless disregard for Plaintiff's civil rights. Punitive damages should be assessed against Individual Defendants to deter them from such conduct in the future.

/ / /

/ / /

/ / /

**First Claim For Relief**

**Deprivation of Due Process Rights, 42 U.S.C. § 1983**

**(Against all Defendants, including Hohnbaum, Miller, Sanders, Baugh, and Martin in both their individual and official capacities)**

44.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the paragraphs above.

45.

Federal law prohibits the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by any person "under color of any statute, ordinance, regulation, custom, or usage, of any State[.]" 42 U.S.C. § 1983. The rights protected by this provision include the right to privacy, equal protection, and due process under the Fourteenth Amendment to the U.S. Constitution, freedom of speech under the First Amendment to the U.S. Constitution, and statutory rights. *See Hibbs v. Dept. of Human Resources (Hibbs I)*, 273 F.3d 844, 860-61 (9th Cir. 2001), *aff'd by Hibbs II*, 538 U.S. 721 (2003) (discussing interaction between statutory civil rights laws and 42 U.S.C. § 1983).

46.

Plaintiff's contract for employment provided her with a property interest in continued employment and promised wages as well as a liberty interest protected by the Due Process Clause of the Fourteenth Amendment and those same reports were protected by Oregon law's prohibition on retaliation and the equal protection clause of the Fourteenth Amendment.

47.

By the acts described above, Defendants deprived Plaintiff of her protected property and

liberty interest without proper due process of the law as guaranteed by the 14th Amendment.

48.

The City's deprivation of Plaintiff's constitutional and statutory rights was pursuant to a City custom, policy or practice of deterring complaints of mismanagement or illegal activity.

49.

The decisions of Baugh, Hohnbaum, Miller, Sanders, and Martin in their official capacities "may fairly be said to represent official policy" of the City. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978).

50.

As a direct and proximate result of Defendants' unlawful acts, Plaintiff has incurred economic losses including but not limited to lost income and lost benefits. These losses are continuing to accrue daily and will be determined by a jury at the time of trial.

51.

As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered loss of future income and impairment of earning capacity in an amount to be determined by the jury.

52.

As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered significant emotional distress, public humiliation, damage to her reputation, depression, loss of dignity and self esteem, anxiety, and loss of enjoyment of life, all in amounts to be determined by the jury at trial.

53.

Plaintiff requests compensatory damages, current and future economic damages, and/or nominal damages, equitable relief, reinstatement, costs and attorney fees pursuant to 42 U.S.C.

§§ 1983, 1988.

## Second Claim For Relief

**Deprivation of Free Speech and Right to Petition the Government, 42 U.S.C. § 1983**

**(Against all Defendants, including Hohnbaum, Miller, Sanders, Baugh, and Martin in both**

**their individual and official capacities)**

54.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the paragraphs above.

55.

Federal law prohibits the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by any person "under color of any statute, ordinance, regulation, custom, or usage, of any State[.]" 42 U.S.C. § 1983.  The rights protected by this provision include the freedom of speech and the right to petition the government for redress of grievances under the First Amendment to the U.S. Constitution.

56.

Defendants deprived Plaintiff of her First Amendment to free speech and to petition the government for redress of grievances by ongoing retaliation, including bad faith investigations, depriving her of wage increases, and suspending her employment.

57.

Plaintiff's complaints opposed discrimination and retaliation and addressed matters of public concern.

58.

Defendant City is liable for the deprivation of Plaintiff's First Amendment rights because

the deprivation of Plaintiff's First Amendment rights was pursuant to a City custom, policy or

practice of discrimination and retaliation against persons who oppose unlawful activity or report

fiscal mismanagement.

59.

At all material times, Individual Defendants had final policy making authority for the

City and engaged in the acts alleged herein while acting as a final policymaker for City. Thus,

the Defendant City is liable for the deprivation of Plaintiff's First Amendment Rights because

the unlawful decisions were made or approved by persons in policymaking positions for

Defendant City.

60.

Defendant City is liable for the deprivation of Plaintiff's First Amendment rights because

persons in policy-making positions ratified the unlawful conduct alleged herein knowing the

basis of the unlawful conduct.

61.

As a direct and proximate result of Defendants' unlawful acts, Plaintiff has incurred

economic losses including but not limited to lost income and lost benefits. These losses are

continuing to accrue daily and will be determined by a jury at the time of trial.

62.

As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered loss

of future income and impairment of earning capacity in an amount to be determined by the jury.

63.

As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered

significant emotional distress, public humiliation, damage to her reputation, depression, loss of

dignity and self esteem, anxiety, and loss of enjoyment of life, all in amounts to be determined by the jury at trial.

64.

Plaintiff requests compensatory damages, current and future economic damages, and/or nominal damages, equitable relief, reinstatement, costs and attorney fees pursuant to 42 U.S.C. §§ 1983, 1988.

**Third Claim for Relief**

**ORS 659A.199 - Retaliation**

**(Against Defendant City)**

65.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

66.

Defendant retaliated against Plaintiff in the terms and conditions of her employment by terminating Plaintiff in substantial part for opposing and/or reporting in good faith what Plaintiff believed to be illegal conduct, as well as evidence of violations of federal and/or state laws, rules, or regulations.

67.

Plaintiff requests compensatory damages, current and future economic damages, and/or nominal damages, equitable relief, reinstatement, costs and attorney fees pursuant to ORS 659A.885.

/ / /

/ / /

**Fourth Claim for Relief**

**ORS 659A.203 - Retaliation**

**(Against Defendant City)**

68.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

69.

Defendant retaliated against Plaintiff in the terms and conditions of her employment by terminating Plaintiff in substantial part for opposing and/or reporting in good faith what Plaintiff believed to be illegal conduct, as well as evidence of violations of federal and/or state laws, rules, or regulations, and/or mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the public or nonprofit employer.

70.

Plaintiff requests compensatory damages, current and future economic damages, and/or nominal damages, equitable relief, reinstatement, costs and attorney fees pursuant to ORS 659A.885.

**Fifth Claim for Relief**

**Tort of Defamation**

**(Against All Defendants)**

71.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

72.

Defendants made false and defamatory statements.

73.

Defendants published the defamatory statements to third parties.

74.

The statements constitute defamatory per se.

75.

Plaintiff suffered, continues to suffer emotional distress, damage to her reputation, and lost income, and requests her economic and non-economic damages and attorney's fees.

## Sixth Claim for Relief

### Wrongful Discharge in Violation of Public Policy

### (Against Defendant City)

76.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

77.

In Oregon, an employer commits the tort of wrongful discharge by, among other actions, terminating an employee "for exercising a job-related right that reflects an important public policy." *Yeager v. Providence Health System*, 96 P.3d 862, 865 (Or. App. 2004) (citation omitted).

78.

At all material times, the public policy of Oregon prohibited an employer from retaliating and discriminating against Plaintiff for reporting or preventing or attempting to prevent an

employee from reporting illegal activity or government mismanagement. This public policy is embodied in the common law, statutes, and regulations of the State of Oregon, including ORS 659A.199, ORS 659A.203, and *Love v. Polk Cty. Fire Dist*., 209 Or. App. 474, 496, 149 P.3d 199, 211 (2006).

79.

Defendant violated the above public policies by discharging Plaintiff to prevent her from invoking and for invoking the rights delineated above.

80.

Plaintiff requests compensatory damages, current and future economic damages, and/or nominal damages, equitable relief, reinstatement, costs and attorney fees.

**Seventh Claim for Relief**

**Aiding and Abetting an Unlawful Employment Practice, ORS 659A.030(1)(g)**

**(Against Hohnbaum, Miller, Sanders, Baugh, and Martin)**

81.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

82.

ORS 659A.030(1)(g) makes it an unlawful employment practice for any person "to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" under Chapter 659A of the Oregon Revised Statutes.

/ / /

/ / /

83.

Defendants violated ORS 659A.030(1)(g) by, without limitation, aiding and abetting one another in the unlawful employment practices under Chapter 659A described in the prior claims for relief, including subjecting Plaintiff to adverse terms and conditions of employment, on the basis of Plaintiff's opposition to/ complaints of illegal activity and mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the public or nonprofit employer.

84.

Plaintiff requests compensatory damages, current and future economic damages, and/or nominal damages, equitable relief, reinstatement, costs and attorney fees pursuant to ORS 659A.885.

**Eighth Claim For Relief**

**Violations of Oregon's Equal Pay Act - ORS § 652.220**

**(Against Defendant City)**

85.

Plaintiff re-alleges and incorporates by this reference all preceding paragraphs of this Complaint.

86.

Defendant willfully, purposefully and intentionally discriminated against Plaintiff in the payment of wages for work of comparable character by paying her wages at a rate less than male employees for work of a comparable character requiring comparable skill in similar working conditions and in violation of its Pay Equity study. Defendant's misconduct violates ORS § 652.220.

87.

The pay differential between Plaintiff and comparable male employees was not due to a seniority system or a merit system that is free of discrimination based on sex.

88.

The pay differential between Plaintiff and comparable male employees was not based in good faith on factors other than sex.

89.

Defendant's conduct directly and proximately caused Plaintiff economic damages in lost compensation in an amount to be determined at trial.  In addition, Plaintiff is entitled to liquidated damages pursuant to ORS § 652.230.  In addition, Plaintiff has suffered severe emotional distress and suffering resulting in non-economic damages.

90.

Plaintiff is entitled to reasonable attorney fees and costs under ORS § 652.230 and ORS § 20.107.

**Ninth Claim for Relief**

**Violations of Equal Pay Act – 29 U.S.C. 201 *et seq*.**

**(Against Defendant City)**

91.

Plaintiff re-alleges and incorporates by this reference all preceding paragraphs of this Complaint.

92.

Defendant willfully, purposefully and intentionally discriminated against Plaintiff in the payment of wages for work of comparable character by paying her wages at a rate less than male

employees for equal work in jobs that require equal skill, effort and responsibility and which were performed under similar working conditions and in violation of the Pay Equity study. Defendants' misconduct violates 29 U.S.C. § 206(d).

93.

The pay differential between Plaintiff and comparable male employees was not due to a seniority system or a merit system that is free of discrimination based on sex.

94.

The pay differential between Plaintiff and comparable male employees was not based in good faith on factors other than sex.

95.

Defendant's conduct directly and proximately caused Plaintiff economic damages in lost compensation in an amount to be determined at trial. In addition, Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. § 216(b). In addition, Plaintiff has suffered severe emotional distress and suffering resulting in non-economic damages.

96.

Defendant's actions were willful and therefore the cause of actions accrues for three years pursuant to 20 U.S.C. §255.

97.

Plaintiff is entitled to reasonable attorney fees and costs under 29 U.S.C. § 216(b) and ORS § 20.107.

/ / /

/ / /

/ / /

**Tenth Claim for Relief**

**Failure to Pay Wages— ORS 652.120**

**(Against Defendant City)**

98.

Plaintiff re-alleges and incorporates by this reference all preceding paragraphs of this Complaint.

99.

The facts set forth above establish that Defendant failed to pay Plaintiff all wages due and owing to her on her regular paydays, therefore violating ORS 652.120(1).

100.

Upon receiving notice of the unpaid wages, Defendant failed to pay Plaintiff any undisputed amounts within the time allotted in ORS 652.120(5).

101.

Pursuant to ORS 652.200(2), Plaintiff is entitled to an award of her unpaid wages, plus costs and reasonable attorney fees.

**Eleventh Claim For Relief**

**ORS 652.610 – Unlawful Deductions**

**(Against Defendant City)**

102.

Plaintiff re-alleges and incorporates by this reference all preceding paragraphs of this Complaint.

103.

Pursuant to ORS 652.610, Defendant was prohibited from withholding, deducting or

diverting certain amounts from Plaintiff's wages, except in certain circumstances that are not

present here. In taking the actions described above, Defendant withheld, deducted and/or

diverted amounts from Plaintiff's wages in violation of the statute.

106.

Defendant also failed to provide the information required by ORS 652.610 in an itemized

statement along with Plaintiff's wages.

105.

Plaintiff is entitled to (for each violation) the greater of $200 or actual damages in an

amount to be proven at trial, pursuant to ORS 652.615, together with attorney fees, costs,

penalties, and pre- and post-judgment interest.

**Twelfth Claim For Relief**

**Oregon Unpaid Wages Upon Termination Claim – ORS 652.140**

106.

Plaintiff re-alleges and incorporates by this reference all preceding paragraphs of this

Complaint.

107.

Pursuant to ORS 652.140, Defendant was required to pay Plaintiff all wages due upon

termination of her employment by the applicable statutory deadline(s) but willfully failed to do

so.

108.

Upon receiving notice of the unpaid wages, Defendant failed to pay Plaintiff any

undisputed amounts within the time allotted.

/ / /

109.

For such violation(s), Plaintiff is entitled to collect all wages remaining due, in an amount to be proven at trial, together with attorneys' fees and costs, as well as pre- and post-judgment interest, and the 30 days of statutory penalty wages provided by ORS 652.150 and ORS 652.200.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.      For permanent injunctive relief enjoining Defendants from engaging in any employment practice that constitutes retaliation;

2.      For a name-clearing hearing to provide for complete due process;

3.      Economic damages and future losses to be determined at trial;

4.      Non-economic damages to be determined at trial;

5.      Reasonable costs and attorney fees; and

6.      For such other and further relief as the Court may deem just and equitable.

DATED: May 6, 2021

> */s/Talia Y. Guerriero*
> Talia Y. Guerriero, OSB No. 115271
> Of Attorneys for Plaintiff